**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 19, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

RONALD J. JANOUSHEK,

        Petitioner-Appellant,

v.

GARY WATKINS; COLORADO
ATTORNEY GENERAL,

        Respondents-Appellees.

No. 07-1354
(D.C. No. 02-cv-988-REB-MJW)
(D. Colo.)

**ORDER**

Before **BRISCOE**, **BALDOCK**, and **LUCERO**, Circuit Judges.

Ronald J. Janoushek, a Colorado state inmate proceeding pro se, requests a certificate of appealability ("COA") to appeal the district court's denial of his 28 U.S.C. § 2254 habeas petition. For substantially the same reasons set forth by the district court, we conclude that Janoushek has failed to make "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), and thus **DENY** a COA and **DISMISS** the appeal.

**I**

After a jury trial, Janoushek was convicted in 1993 of first-degree murder, and was sentenced to life imprisonment without the possibility of parole. We briefly summarize the facts as found by the Colorado Court of Appeals. See Janoushek v. Watkins, No. CIV. 02-CV-00988-REB, 2007 WL 2316947, at *2-3 (D. Colo. Aug. 9, 2007) (quoting state court's description of facts) (unpublished).

Janoushek was charged with fatally shooting his girlfriend outside the back entrance to a bar. The two were at the bar together around 9:00 p.m., but Janoushek left shortly thereafter. He returned around 1:30 a.m. and parked his car behind the victim's car. The two spoke briefly in the bar, went out back together, and were heard arguing. A bartender then heard Janoushek pounding on the rear door, opened it, and discovered the victim's body. The autopsy indicated that the victim had been shot in the neck and that the bullet traveled upward into her brain, killing her instantly. The coroner testified that the gun had been forced hard against the victim's neck before firing and that the victim had been struck on the head immediately before or after her death.

When police arrived, they detected a smell of alcohol on Janoushek, but did not perform any alcohol testing. Janoushek was taken into custody. He was read his Miranda rights and signed a form waiving those rights and agreeing to speak to the police. During the resulting interview, an audio-recording of which was played to the jury, Janoushek stated that he and the victim had been arguing, and

that he got his gun from his car and placed it to his head and then to the victim's head, at which point the victim hit his arm, causing the gun to discharge. His primary defense at trial was that he was too intoxicated to act with intent to kill the victim or to deliberate prior to doing so, two elements of first-degree murder under Colorado law.

Janoushek's conviction was affirmed on direct appeal, and the Colorado Supreme Court denied certiorari review. He later filed a motion for state post-conviction relief, and a supplement to that motion, which were denied. The Colorado Court of Appeals affirmed, and the Colorado Supreme Court en banc denied certiorari review.

Janoushek then filed his § 2254 petition in May 2002. In 2006, the magistrate judge recommended denial of the petition in a detailed, fifty-four page recommendation. After consideration of Janoushek's objections, the district court adopted the recommendation and denied the petition in August 2007. Janoushek, 2007 WL 2316947, at *1. The district court subsequently denied Janoushek's request for a COA.

**II**

A § 2254 petitioner is entitled to habeas relief on a claim previously rejected on the merits in state court only if the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or was "based on an

unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). A petitioner's right to appeal a district court's denial of habeas relief under § 2254 is conditioned upon a grant of a COA. 28 U.S.C. § 2253(c)(1)(A). A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." § 2253(c)(2). This requires Janoushek to show "that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 473, 484 (2000).

### III

In his request for a COA from this court, Janoushek seeks to appeal the denial of thirteen claims.[1] We have reviewed the record and the magistrate judge's thorough recommendation, as adopted by the district court, and we conclude that jurists of reason would not disagree with its resolution of Janoushek's petition.

Janoushek first presents a due process argument, claiming that there was insufficient evidence to support a finding that he acted "after deliberation," an

---

[1]    Although Janoushek's petition contained both exhausted and unexhausted claims, the district court addressed the entire petition on the merits, and we will do likewise. See Moore v. Schoeman, 288 F.3d 1231, 1235 (10th Cir. 2002); see also 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

element of his first-degree murder conviction.  The state court determined that there was sufficient evidence that Janoushek acted "after deliberation" because the evidence at trial, viewed in the light most favorable to the prosecution, was that Janoushek:  (1) returned to the bar and parked his car so as to block the victim's car; (2) argued with the victim; (3) retrieved his gun from a carrying case inside his car during the argument; (4) struck the victim's head with his gun; and (5) shot her at point-blank range in the neck, with his gun muzzle shoved into her neck and aimed up at her head.  The state court's determination that this evidence was sufficient to show Janoushek acted "after deliberation" was not an unreasonable determination of the facts, nor was it contrary to or an unreasonable application of clearly established federal law.  See Jackson v. Virginia, 443 U.S. 307, 319 (1979) ("[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.").[2]

Janoushek's second assertion is that his due process rights were violated when the prosecutor stated in closing argument that a fiber visible on a photo of

---

[2]	Janoushek bases his sufficiency of evidence claim in part on his assertions that:  (1) the prosecutor was obligated to disprove what he calls his "affirmative defense" of intoxication, (2) the prosecutor was not held to this burden due to an incorrect intoxication instruction, and (3) there was insufficient evidence for the prosecutor to have disproven the intoxication "defense."  Under Colorado law, however, voluntary intoxication is not an affirmative defense.  See People v. Harlan, 8 P.3d 448, 470-71 (Colo. 2000).  Moreover, the state's legal burden is to prove all the elements of the offense, not to disprove affirmative defenses, and this burden was not lowered by the intoxication instruction given at trial.

the gun was the victim's hair. The state court found that this statement was improper because there was no evidence the fiber was actually the victim's hair. Reviewing for plain error because Janoushek did not contemporaneously object to the statement, it determined that the misstatement did not cast serious doubt on the reliability of the verdict because other evidence supported an inference that Janoushek struck the victim on the head with his gun and the jury was instructed that closing arguments are not evidence. We conclude that no reasonable jurist would disagree with the district court's conclusion that the prosecutor's comments did not "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process." See Hamilton v. Mullin, 436 F.3d 1181, 1187 (10th Cir. 2006) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)).

Janoushek's third and fourth claims relate to the state court's exclusion of a proposed expert witness for Janoushek who was to testify generally about the effects of chronic alcoholism on Janoushek. On direct appeal, the Colorado Court of Appeals noted that the trial court had excluded the witness in reliance on an overruled state court decision. The court decided that the exclusion was immaterial because the witness was properly excluded under a state statute providing that evidence of self-induced intoxication may be offered only to negate the existence of specific intent, and not as proof of generally impaired mental condition. See Janoushek, 2007 WL 2316947, at *10 n.1 (quoting state court

-6-

resolution); see also Colo. Rev. Stat. § 18-1-804. We do not review the state courts' application of § 18-1-804, as that is a pure issue of state law unreviewable by a habeas court. See Estelle v. McGuire, 502 U.S. 62, 67 (1991).

Specifically, Janoushek's third claim is that excluding this witness deprived him of his constitutional right to present a defense.[3] This right is violated only where a state evidentiary rule "infringe[s] upon a weighty interest of the accused and [is] arbitrary or disproportionate to the purposes [it is] designed to serve." Holmes v. South Carolina, 547 U.S. 319, 324 (2006) (quotations omitted). In this case, Colorado's statute excluding evidence of intoxication except as to specific intent "is supported by weighty policy choices about the extent to which drunkenness can excuse criminal responsibility." Bieber v. People, 856 P.2d 811, 817 (Colo. 1993) (quotation omitted). In Bieber, the Colorado Supreme Court further explained that because "[i]t is a matter of common knowledge that the excessive use of liquor or drugs impairs the perceptual, judgmental and volitional faculties of the user," self-induced intoxication "involves a degree of moral culpability" which justifies the exclusionary statute. Id. (quotations omitted).

---

[3] The district court concluded that this claim was one of pure state law. Although we agree that we may not consider whether the state court properly interpreted the state statute in excluding Janoushek's witness, we may consider whether the state's exclusionary rule violated Janoushek's federal constitutional rights. Estelle, 502 U.S. at 67 ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.").

Thus, the Colorado statute excluding evidence of self-induced intoxication as a general defense is not "arbitrary or disproportionate" and reasonable jurists would agree that its application in Janoushek's case did not violate his right to a complete defense. Holmes, 547 U.S. at 324.

Janoushek's fourth claim is that his due process rights were violated when the trial court denied his request for a trial continuance to assert an impaired mental condition defense under Colo. Rev. Stat. § 18-1-803. Janoushek argues that such a defense could have made the expert witness' proposed testimony relevant. The state court found no abuse of the trial court's discretion in denying the continuance, which was not made until the first day of trial. On habeas review, the district court found the continuance denial was not so arbitrary and fundamentally unfair that it violated constitutional principles of due process. See Lucero v. Kerby, 133 F.3d 1299, 1309 (10th Cir. 1998). This conclusion is not reasonably debatable.

Fifth, Janoushek posits that his due process rights were violated when the state did not collect a sample of his blood to test his alcohol content, which might have provided exculpatory evidence in support of his intoxication defense. Failure to preserve potentially useful evidence does not violate due process unless the defendant can show the police acted in bad faith. See Arizona v. Youngblood, 488 U.S. 51, 58 (1988). The state court found that the police did not act in bad faith in this case because the blood alcohol evidence did not have an obvious

exculpatory value that was apparent to the police at the time of their investigation and arrest. The police testified that they did detect a slight odor of alcohol, and that Janoushek told them he had had a couple of drinks. They also stated, however, that he was coordinated and able to understand and follow their instructions, and that they believed him to be emotionally upset rather than intoxicated. We agree with the district court's conclusion that the state court's interpretation and application of Youngblood was reasonable.

Sixth, Janoushek claims that the trial court erred in denying his motion to suppress the statement he made to the police because the record fails to show that he voluntarily and intelligently waived his rights under Miranda v. Arizona, 384 U.S. 436, 444-45 (1966). Janoushek's primary basis for this claim is his comment during his Miranda warning that he did not have a lawyer. After conducting a hearing on the suppression motion and listening to an audiotape of the interview, the trial court denied the motion. The court found that Janoushek was given a full and proper Miranda warning which he understood, that he voluntarily waived his rights, that his comment did not constitute even an ambiguous request for counsel, and that his statement was not coerced or otherwise involuntary. The Colorado Court of Appeals upheld these findings and found no error in the trial court's denial of the motion to suppress. We conclude that the state court's factual findings were reasonable and that its legal analysis was neither contrary to, nor an unreasonable application of, Miranda.

In claim seven, Janoushek argues that he was denied his right to a fair trial by the state trial court's ruling that defense counsel could not refer to Janoushek's police statement during his opening statement, as that statement was inadmissible hearsay unless offered by the state. At that point, the government had not yet decided to introduce the statement. Janoushek complains that this ruling was unfair because the government then proceeded to introduce it almost immediately after the trial began. Relying on state evidentiary rules, the state appellate court found no plain error. Reasonable jurists would not disagree with the district court's conclusion that the alleged error was not so grossly prejudicial that it fatally infected the trial. See Estelle, 502 U.S. at 75. Janoushek also claims that an incorrect transcription of his police statement was read to the jury. Because this claim was not raised before the district court in Janoushek's § 2254 petition, we will not consider it. Rhine v. Boone, 182 F.3d 1153, 1154 (10th Cir. 1999).

We further conclude that reasonable jurists would neither disagree with the district court's determination that Janoushek was not denied a fair trial because the jury sent a note asking defense counsel to speak up (claim eight), nor with its determination that he was deprived of his right to be present at trial when the trial court discussed with counsel a defense witness's failure to appear (claim nine). This matter was ministerial, and the defense motion for an arrest warrant for the witness was granted.

As his tenth claim, Janoushek argues that plain constitutional error occurred when the jury was not properly instructed that his defense of voluntary intoxication could negate the "after deliberation" element of first-degree murder. Under Colorado law, "[a] person commits the crime of murder in the first degree if . . . after deliberation and with the intent to cause the death of a person other than himself, he causes the death of that person . . . ." Colo. Rev. Stat. § 18-3-102(1)(a) (emphasis added). The intoxication instruction, given without contemporaneous objection from Janoushek, directed the jury to consider whether, because of intoxication, Janoushek "did not have the capacity to form the specific intent" required for first-degree murder. Several years after Janoushek's direct appeal was final, the Colorado Supreme Court ruled in another case that this same instruction misstated the law in part because it did not unambiguously inform the jury that it should consider whether evidence of intoxication kept the defendant from deliberating before killing his victim, in addition to whether it kept the defendant from acting with intent to cause death. People v. Harlan, 8 P.3d 448, 475 (Colo. 2000).

Janoushek's post-conviction motion asserting this instructional error was denied by the Colorado Court of Appeals. Review was for plain error because Janoushek had not objected to the instruction. Because the jury was properly instructed on all of the elements for the offense of first-degree murder and the prosecution's burden of proof on each of these elements was not lessened, the

court concluded that the error did not rise to the level of a constitutional error. The court also determined that there was no reasonable possibility that the instructional error contributed to Janoushek's conviction because: (1) the jury was properly instructed that the prosecution must prove each element of first-degree murder—including both the "with intent" and "after deliberation" elements—beyond a reasonable doubt; (2) it was properly instructed on the meaning of the terms "after deliberation" and "voluntary intoxication;" and (3) both parties discussed intoxication and its effect on both intent and deliberation during closing arguments. Thus, the state court ruled that although the instruction given was erroneous, it did not rise to the level of plain constitutional error.

"[A]s a general rule, errors in jury instructions in a state criminal trial are not reviewable in federal habeas corpus proceedings, unless they are so fundamentally unfair as to deprive petitioner of a fair trial and . . . due process of law." Patton v. Mullin, 425 F.3d 788, 807 (10th Cir. 2005) (quotation omitted), cert. denied, 126 S. Ct. 2327 (2006); see also Henderson v. Kibbe, 431 U.S. 145, 154 (1977) (holding that in considering a habeas claim based on an improper jury instruction, courts must ask "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process, not merely whether the instruction is undesirable [or] erroneous" (quotations omitted)). In other words, "not every ambiguity, inconsistency, or deficiency in a jury

instruction rises to the level of a due process violation." Middleton v. McNeil, 541 U.S. 433, 437 (2004). The ailing instruction "may not be judged in artificial isolation," id. (quotation omitted), but must be considered "in the context of the instructions as a whole and the trial record," Estelle, 502 U.S. at 72.

The district court evaluated the instructions as a whole, as had the state court, and concluded that taken together, they required the prosecution to prove beyond a reasonable doubt that Janoushek: (1) acted with the intent to kill the victim, (2) did so after deliberation, and (3) was not so intoxicated that he lacked the capacity to form the specific intent to kill the victim. Although the jury was not affirmatively instructed that the "after deliberation" element could be negated by evidence of voluntary intoxication, the instructions as a whole did not mislead or restrict the jury in any way from considering this possibility. See Middleton, 541 U.S. at 437 ("[I]f the charge as a whole is ambiguous, the question is whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution." (quotations omitted)). Based on this understanding of the overall effect of the jury instructions, the district court concluded that the instructions were not so fundamentally unfair as to deprive Janoushek of a fair trial or due process of law. Thus, it concluded that the state court's decision was not contrary to or an unreasonable application of clearly established federal law and did not involve an unreasonable factual determination.

-13-

We have carefully reviewed the entirety of the record, including the jury instructions. Based on this review, we agree with the district court that: (1) the jury was properly instructed to find the existence of both the intent and deliberation elements beyond a reasonable doubt; (2) the jury was not misled or restricted from considering whether evidence of intoxication negated the deliberation element; and (3) the instructional error did not lessen the prosecution's burden of proof in any regard.[4] We therefore conclude that reasonable jurists would not disagree with the district court's resolution of this claim.

Lastly, Janoushek argues that cumulative error rendered his trial fundamentally unfair. In light of the conclusions set forth above, no reasonable jurist could debate the district court's denial of this claim.

**IV**

Janoushek also argues that the district court erred in denying his motion to amend or stay the § 2254 habeas proceeding to allow him to exhaust ineffective assistance of counsel claims in state court. The district court denied the motion because many years had expired since the time permitted by state law to assert these claims; thus, they were procedurally defaulted. In the alternative, Janoushek sought to amend his petition to include the ineffective assistance of

---

[4] Janoushek's arguments to the contrary are premised on his mistaken belief that voluntary intoxication is an affirmative defense, but as noted above, under state law it is not. <u>See</u> <u>Harlan</u>, 8 P.3d at 470-71.

counsel claims. The district court denied the motion, explaining that, where state court remedies are no longer available because the petitioner did comply with the state timeliness for seeking review, procedural default functions as a bar to federal habeas review. Woodford v. Ngo, 126 S. Ct. 2378, 2387 (2006). In a lengthy analysis, the district court found no cause or prejudice to excuse Janoushek's procedural default. We conclude that jurists of reason would not debate the district court's ruling that these claims are procedurally barred and that Janoushek did not demonstrate cause and prejudice excusing this bar.

## V

For the reasons set forth above, Janoushek's request for a COA is **DENIED**, and his appeal is **DISMISSED**.

Entered for the Court

ELISABETH A. SHUMAKER, Clerk