FILED
United States Court of Appeals
Tenth Circuit

July 12, 2011

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

ANDRE GRAHAM,

Defendant-Appellant.

No. 11-3052
(D.C. Nos. 5:07-CR-40048-JAR-1;
5:10-CV-04022-JAR)
(D. Kan.)

---

ORDER DENYING CERTIFICATE OF APPEALABILITY[*]

---

Before **KELLY**, **HARTZ**, and **HOLMES**, Circuit Judges.

Petitioner Andre Graham, a federal prisoner proceeding *pro se*,[1] seeks a

certificate of appealability ("COA") to challenge the denial of his motion for

relief under 28 U.S.C. § 2255. Exercising jurisdiction under 28 U.S.C. §§ 1291

---

[*]     This order is not binding precedent, except under the doctrines of law
of the case, res judicata, and collateral estoppel. It may be cited, however, for its
persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and
Tenth Circuit Rule 32.1.

After examining the appellate record, this three-judge panel determined
unanimously that oral argument would not be of material assistance in the
determination of this appeal. *See* Fed. R. App. P. 34(a); 10th Cir. R. 34.1(G).
The case is therefore ordered submitted without oral argument.

[1]     Because Mr. Graham is proceeding pro se, we construe his filings
liberally. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *Van
Deelen v. Johnson*, 497 F.3d 1151, 1153 n.1 (10th Cir. 2007).

and 2253(a), we deny Mr. Graham's request for a COA and dismiss his appeal.

## BACKGROUND

On June 2, 2008, Mr. Graham pleaded guilty to one count of possession with intent to distribute cocaine hydrochloride, in violation of 21 U.S.C. § 841(a)(1), and one count of possession of a firearm during and in relation to a drug-trafficking crime, in violation of 21 U.S.C. § 924(c)(1)(A). Shortly thereafter, on June 23, 2008, Mr. Graham's attorney, Jonathan Phelps, filed a motion to withdraw. The court held a hearing regarding the motion, granted it, and appointed Kay Huff to represent Mr. Graham. The Probation Office prepared a Presentence Investigation Report ("PSR") in the run-up to sentencing.

Prior to sentencing, however, Mr. Graham filed a motion to withdraw his guilty plea. In response, the district court held an evidentiary hearing on March 2, 2009, at which both Mr. Phelps and Mr. Graham testified. The court, in a thorough memorandum and order, then denied Mr. Graham's motion on March 31, 2009. In rendering its decision, the district court noted that it had considered not only the testimony from the evidentiary hearing, but also the other evidence presented therein. This included evidence regarding Mr. Graham's mental health—which Mr. Phelps had originally submitted to the court at the plea hearing—along with the transcript of the plea hearing and the supplemental briefing filed by Mr. Graham's new attorney, Ms. Huff. Mr. Graham was eventually sentenced to 144 months' imprisonment.

2

Mr. Graham elected not to directly appeal from his conviction or sentence. Instead, he filed the instant § 2255 action on February 26, 2010. In his petition, Mr. Graham identified two alleged errors. As relevant here, they are: (1) that his first attorney, Mr. Phelps, provided ineffective assistance of counsel "by failing to move for a competency evaluation prior to petitioner's entry of a guilty plea"; and (2) that his second attorney, Ms. Huff, provided ineffective assistance of counsel "in failing to object to various matters in the presentence report." R. at 119 (Mem. & Order, filed Jan. 31, 2011).[2]

The district court found no merit to either claim. As to Mr. Graham's first claim, the district court noted that "in denying the motion to withdraw [the] plea, the Court [effectively] analyzed petitioner's competency. Indeed, in denying the motion to withdraw, the Court necessarily, and expressly determined that the plea was knowing and voluntary, and that petitioner was competent to enter into the plea." *Id.* at 123–24. Further, the court observed that it had considered "numerous mental health records for petitioner" at the plea hearing, and,

---

[2]  In addition, Mr. Graham alleged that Mr. Phelps rendered ineffective assistance of counsel when he misrepresented the length of the sentence that the court might impose. *See* R. at 122 (noting that Mr. Graham asserted that "Mr. Phelps did not competently represent him, in that he[] misrepresented to him that he could expect a total 77 month sentence"). Mr. Graham does not renew this claim before this court; consequently, we need not consider it here. *See State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 984 n.7 (10th Cir. 1994) (noting that issues raised below, but not addressed in an appellant's opening brief, are deemed waived).

moreover, that it had "considered [this] evidence" when it "den[ied] the motion to withdraw plea." *Id.* at 124.[3] Based on Mr. Phelps's earlier presentation of evidence to the court concerning Mr. Graham's mental health, as well as the court's prior determination that Mr. Graham was competent to enter a guilty plea, the district court concluded that Mr. Phelps was not ineffective in failing to file a motion for a competency evaluation.

The district court also found Mr. Graham's second argument—that Ms. Huff was ineffective for failing to object to certain portions of the PSR—to be equally unavailing. As a term of the plea agreement, Mr. Graham explicitly "waive[d] any right to challenge a sentence or otherwise attempt to modify or change his sentence or manner in which it was determined in any collateral attack, including, but not limited to, a motion brought under Title 28, U.S.C. § 2255." *Id.* at 126. The district court therefore concluded that Mr. Graham "ha[d] no right to collaterally attack the sentence by virtue of the terms of the plea agreement." *Id.* at 127. Accordingly, it dismissed Mr. Graham's petition, and denied his application for a COA.

Mr. Graham now seeks leave from this court to challenge that decision.

---

[3] The same district court judge presided over both Mr. Graham's original district court proceeding and his collateral challenge to that proceeding.

## STANDARD OF REVIEW

A COA is a jurisdictional prerequisite to this court's review of a § 2255 motion. 28 U.S.C. § 2253(c)(1)(B); *accord Miller–El v. Cockrell*, 537 U.S. 322, 336 (2003); *United States v. Gonzalez*, 596 F.3d 1228, 1241 (10th Cir.), *cert. denied*, 131 S. Ct. 172 (2010). To warrant a COA, an applicant must make a "substantial showing of the denial of a constitutional right." *United States v. Tony*, 637 F.3d 1153, 1157 (10th Cir. 2011) (quoting 28 U.S.C. § 2253(c)(2)) (internal quotation marks omitted); *accord Allen v. Zavaras*, 568 F.3d 1197, 1199 (10th Cir. 2009). "To make such a showing, an applicant must demonstrate [that] 'reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.'" *Tony*, 637 F.3d at 1157 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)) (internal quotation marks omitted). "In other words, the applicant must show that the district court's resolution of the constitutional claim was either 'debatable or wrong.'" *United States v. Taylor*, 454 F.3d 1075, 1078 (10th Cir. 2006) (quoting *Slack*, 529 U.S. at 484).

When determining whether to grant a COA, our "threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims." *United States v. Silva*, 430 F.3d 1096, 1100 (10th Cir. 2005) (quoting *Miller-El*, 537 U.S. at 336) (internal quotation marks omitted). An applicant "is not required to prove the merits of his case," *id.*; however, "he must demonstrate

5

'something more than the absence of frivolity or the existence of mere good faith' on his part," *id.* (quoting *Miller-El*, 537 U.S. at 338).

## DISCUSSION

In his application for a COA, Mr. Graham renews his claims that (1) Mr. Phelps provided ineffective assistance of counsel by failing to request a competency hearing prior to Mr. Graham's entry of a guilty plea; and (2) Ms. Huff rendered ineffective assistance when she failed to object to certain aspects of the PSR.[4] We review these claims under the familiar framework established in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). As we recently explained:

> Under that standard, in order to prevail on a claim of ineffective

---

[4] In addition, Mr. Graham appears to raise a failure-to-investigate claim, arguing that "[h]ad Mr. Phelps investigated appellant[']s history of mental problems and sought information about his mental state . . . , Mr. Phelps would have discovered significant evidence casting doubt on appellant[']s competency to enter into a plea agreement." Aplt.'s Br. in Support of Appl. for COA ("COA Appl.") at 8; *see id.* at 10 ("Mr. Phelps had no intention [of] investigating anything. . . . Had Mr. Phelps investigated appellant[']s mental illness[e]s, . . . he would [have] discovered the . . . symptoms of [his] mental defects . . . ."). Mr. Graham did not, however, raise this claim before the district court; consequently, we will not consider it now. *See United States v. Windrix*, 405 F.3d 1146, 1156 (10th Cir. 2005) (declining to address an issue that the party "did not argue in district court," because "in general we will not consider an argument not raised below," particularly where a party has "not argue[d] on appeal that any special circumstance requires us to address this contention despite lack of preservation below"); *Parker v. Scott*, 394 F.3d 1302, 1307 (10th Cir. 2005) (concluding that a habeas petitioner had waived the claims "that he did not raise in the district court"); *see also United States v. Goode*, 406 F. App'x 319, 321 (10th Cir. 2011) ("Mr. Goode failed to raise the two claims presented in his combined Application for a COA and Opening Brief in the district court habeas proceeding, and we generally do not consider claims raised for the first time on appeal.").

6

assistance of counsel, [the petitioner] must show both that his counsel's performance "fell below an objective standard of reasonableness" *and* that "the deficient performance prejudiced the defense." Courts are free to address these two prongs in any order, and failure under either is dispositive.

*Byrd v. Workman*, — F.3d —, 2011 WL 2084204, at *6 (10th Cir. May 27, 2011) (quoting *Strickland*, 466 U.S. at 687–88) (internal citations omitted).

## A.     Ineffectiveness of Mr. Phelps

Mr. Graham first contends that it was the ineffective assistance of Mr. Phelps that prompted him to enter a guilty plea. Specifically, Mr. Graham avers that Mr. Phelps was ineffective due to his "fail[ure] to move the district court for a psychiatric evaluation after discovering appellant[']s mental health defects which precluded him from understanding the nature and consequences of the proceedings against him." COA Appl. at 6. Mr. Graham maintains that it was his "incompetency that led [him] to plead[] guilty," and that "[h]ad [he] had the rational understanding of the ramifications of pleading guilty he would not have plead [sic] guilty but would have insisted on going to trial." *Id.* (first alteration in original).

The district court dismissed this claim on the merits,[5] and reasonable jurists

---

5       As we discuss *infra*, Mr. Graham expressly waived the right to collaterally attack his conviction and sentence through a § 2255 motion when he entered into his plea agreement. However, in *United States v. Cockerham*, 237 F.3d 1179 (10th Cir. 2001), we held that such waivers are not enforceable where the movant asserts an ineffective-assistance claim based on counsel's

(continued...)

could not debate the court's resolution. Even assuming, *arguendo*, that Mr. Graham could satisfy *Strickland*'s first prong—that is, even assuming that Mr. Phelps's performance in failing to move for a competency determination "fell below an objective standard of reasonableness," *Strickland*, 466 U.S. at 688—we conclude that Mr. Graham has not satisfied *Strickland*'s second prong. In other words, Mr. Graham has failed to demonstrate that he was prejudiced by Mr. Phelps's purported shortcomings.

In order to satisfy *Strickland*'s second prong, Mr. Graham must establish "that there is a reasonable probability that, but for counsel's error, 'the result of

---

[5](...continued)
representation in negotiating or entering the plea or waiver. *Id.* at 1187. The government did not seek to enforce the collateral-attack waiver with regard to the ineffective-assistance claim pertaining to Mr. Phelps's failure to file a motion for a competency hearing because the government concluded that this claim was covered by the *Cockerham* exception. *See* R. at 91–92 (Gov.'s Resp. to Def.'s Mot. Under § 2255, filed Apr. 8, 2010) ("As an alternative basis upon which to deny the defendant's claims of ineffective assistance with respect to his *three sentencing claims*, this Court could enforce the appellate waiver in the parties' Plea Agreement, where the defendant waived the right to collaterally attack his sentence." (emphasis added) (citation omitted)); *id.* at 92 n.7 ("The government does not request enforcement of the waiver with respect to the defendant's claims that he incompetently, involuntarily, and unknowingly entered his plea. . . . [T]hese claims go to the validity of the plea." (citing *Cockerham*, 237 F.3d at 1187)); *see also United States v. Masters*, 317 F. App'x 750, 755 (10th Cir. 2009) ("For an ineffective assistance of counsel claim to fall within this [*Cockerham*] exception, it must bear more than a tangential relationship to the plea agreement waiver."). The district court's analysis does not question the propriety of this government concession, and reasonable jurists could not debate this decision. *See United States v. Abston*, 401 F. App'x 357, 365 n.4 (10th Cir. 2010) ("[B]ecause the government has not sought to enforce the collateral-attack waiver, it has forfeited its ability to do so.").

8

the proceeding would have been different.'" *United States v. Challoner*, 583 F.3d 745, 749 (10th Cir. 2009) (quoting *Strickland*, 466 U.S. at 688). Thus, he must show that, absent Mr. Phelps's alleged failings, the court would have conducted a competency hearing. This he cannot do. Although we recognize that Mr. Graham has a history of mental health issues, "[n]ot every manifestation of mental illness demonstrates incompetence to stand trial." *United States ex rel. Foster v. DeRobertis*, 741 F.2d 1007, 1012 (7th Cir. 1984). Instead, a competency determination is only required where there is sufficient evidence presented to raise a "bona fide doubt" as to a defendant's competency. *See Pate v. Robinson*, 383 U.S. 375, 385 (1966); *see also Drope v. Missouri*, 420 U.S. 162, 173 (1975); *McGregor v. Gibson*, 248 F.3d 946, 953 (10th Cir. 2001) ("[I]t is clear that to prevail on a procedural due process competency claim a petitioner must raise a bona fide doubt regarding his competency to stand trial at the time of conviction . . . .").[6]

---

[6] There are two distinct types of competency claims: procedural and substantive. *United States v. Cornejo-Sandoval*, 564 F.3d 1225, 1232 (10th Cir. 2009). "A procedural competency claim is based upon a trial court's alleged failure to hold a competency hearing, or an adequate competency hearing, while a substantive competency claim is founded on the allegation that an individual was tried and convicted while, in fact, incompetent." *McGregor*, 248 F.3d at 952. As we recognized in *McGregor*, "an individual raising a procedural competency claim is held to a lower burden of proof than one raising a substantive competency claim." *Id.*; *accord Cornejo-Sandoval*, 564 F.3d at 1232. To carry this burden, a party asserting a procedural competency claim must meet the "bona fide doubt" standard. *See Cornejo-Sandoval*, 564 F.3d at 1233.

(continued...)

9

Prior to accepting Mr. Graham's plea, the district court was presented with a number of documents by Mr. Phelps attesting to Mr. Graham's history of mental health issues. Further, as Mr. Graham acknowledges, the plea agreement itself included a reference to his "confine[ment] to Larned State Hospit[a]l," a mental health facility in Kansas. *See* COA Appl. at 9. The district court, therefore, had before it significant evidence regarding Mr. Graham's possible incompetence.

When evidence raises a "bona fide doubt" as to a defendant's competency, the district court has an independent obligation to order a competency hearing *sua*

---

[6](...continued)

Although Mr. Graham appears at times to be asserting that he actually *was* incompetent when entering his plea agreement, *see* COA Appl. at 6 ("It was appellant[']s incompetency that led [him] to plead[] guilty." (second alteration in original)), we conclude that application of the lower, procedural "bona fide doubt" standard is appropriate in this instance. The claim Mr. Graham asserts dictates this conclusion. In order to prove that his counsel was ineffective, Mr. Graham must demonstrate that he was prejudiced by his counsel's allegedly improper conduct—that is, he must show that there is a reasonable probability that the outcome would have been different but for that conduct. *See Strickland*, 466 U.S. at 688. Mr. Graham asserts that his counsel (i.e., Mr. Phelps) was ineffective for failing to *move* for a competency hearing; he does not argue that his counsel was constitutionally ineffective because he failed to demonstrate to the district court that Mr. Graham was *in fact* incompetent. Thus, the outcome implicated by Mr. Graham's claim is the granting of a competency hearing, not the substantive determination of competence *vel non*. Mr. Graham therefore must establish that but for his counsel's failure to move for a competency hearing, the court would have granted such a hearing. Consequently, Mr. Graham's claim implicates the "bona fide doubt" standard that guides the district court in determining whether to grant a competency hearing. *See, e.g.*, *Walker v. Gibson*, 228 F.3d 1217, 1230–31 (10th Cir. 2000) (applying the "bona fide doubt" standard to petitioner's claim of ineffective assistance of counsel for failure to request a competency hearing), *abrogated on other grounds by Neill v. Gibson*, 278 F.3d 1044 (10th Cir. 2001).

*sponte*.  *See Pate*, 383 U.S. at 385 ("Where the evidence raises a 'bona fide doubt' as to a defendant's competence to stand trial, the judge on his own motion must impanel a jury and conduct a sanity hearing pursuant to [the Illinois competency statute]."); *see also Porter v. McKaskle*, 466 U.S. 984, 985 (1984) (Marshall, J., dissenting) ("It is settled that, if evidence available to a trial judge raises a bona fide doubt regarding a defendant's ability to understand and participate in the proceedings against him, the judge has an obligation to order an examination to assess his competency, even if the defendant does not request such an exam."); *United States v. Newman*, 733 F.2d 1395, 1400 (10th Cir. 1984) ("A trial court must order a hearing to determine the defendant's competency if information comes to the trial court's attention that raises a bona fide doubt about the defendant's competency to stand trial." (citing *Pate*, 383 U.S. at 385)).  In this instance, despite Mr. Phelps's submission of evidence relating to Mr. Graham's mental illness, the court did not order a competency hearing.  The court effectively determined that there was no "bona fide doubt" regarding Mr. Graham's competency, and concluded that he was in fact competent.  *See* R. at 124 ("The Court . . . considered defendant's mental health records as evidence at the plea hearing in determining that petitioner was competent to enter the plea.").

Mr. Graham has not explained why there is a reasonable probability that, if his counsel had moved for a competency hearing, the outcome would have been different—that is, the district court would have developed a bona fide doubt

11

concerning his competency and granted a competency hearing. In particular, Mr. Graham has not identified *any* additional competency-related evidence that counsel's motion would have put before the district court, much less evidence of the sort that would permit us to conclude that there is a reasonable probability that the district court, had it possessed such evidence, would have ordered a competency hearing based upon a "bona fide doubt" as to Mr. Graham's competency to enter his plea. Consequently, Mr. Graham has not satisfied *Strickland*'s second prong, and his claim must fail. Accordingly, we decline to grant him a COA on this issue.

## B. Ineffectiveness of Ms. Huff

Next, Mr. Graham alleges that Ms. Huff provided ineffective assistance of counsel by failing to "object to the calculation of appellant[']s prior convictions that were being assessed in his criminal history." COA Appl. at 19. He maintains that at least one of his prior convictions "did not apply" because of "the applicable time period [used] when calculating appellant[']s criminal history catagory [sic]." *Id.* Additionally, Mr. Graham believes that Ms. Huff was ineffective in failing to object to the two-point addition to his criminal history under U.S.S.G. § 4A1.1(d) for having committed the instant offense while on probation for another offense. *Id.* at 20. The district court denied these sentence-related claims, concluding that Mr. Graham had "waived his right to collaterally attack his sentence under § 2255 by the terms of his plea agreement." R. at 125.

12

Reasonable jurists could not debate the district court's resolution of this issue. "[W]e do not hesitate to 'hold a defendant to the terms of a lawful plea agreement,'" *United States v. Sandoval*, 477 F.3d 1204, 1206 (10th Cir. 2007) (quoting *United States v. Atterberry*, 144 F.3d 1299, 1300 (10th Cir. 1998)), including agreements that contain appellate or collateral-attack waivers, *see, e.g.*, *Cockerham*, 237 F.3d at 1181 ("[I]t is well established that a defendant's waiver of the statutory right to direct appeal contained in a plea agreement is enforceable if the defendant has agreed to its terms knowingly and voluntarily."); *id.* at 1183 ("[W]e conclude that a waiver of collateral attack rights brought under § 2255 is generally enforceable where the waiver is expressly stated in the plea agreement and where both the plea and the waiver were knowingly and voluntarily made."); *see also United States v. Hahn*, 359 F.3d 1315, 1324–25 (10th Cir. 2004) (en banc) (per curiam). In order to enforce the waiver provision contained in Mr. Graham's plea agreement, however, three criteria must be met: (1) his challenge must fall within the scope of the waiver provision; (2) his waiver of collateral-attack rights must have been knowing and voluntary; and (3) enforcement of the waiver must not result in a fundamental miscarriage of justice. *See United States v. Cudjoe*, 634 F.3d 1163, 1164–65 (10th Cir. 2011); *Hahn*, 359 F.3d at 1325–27; *Cockerham*, 237 F.3d at 1183 ("Of course, the same exceptions to the waiver of the right to appeal, if they arise, would be available to the waiver of the right to collateral attack. In other words, the constraints which apply to a waiver of the

13

right to direct appeal also apply to a waiver of collateral attack rights."). "[S]ubject to [these conditions], it is consistent with Supreme Court precedent to enforce a waiver of § 2255 rights expressly contained in a plea agreement when the collateral attack does not challenge counsel's representation in negotiating or entering the plea or the waiver." *Cockerham*, 237 F.3d at 1187. Like the district court, we have little trouble concluding that the collateral-attack waiver was enforceable here.

First, Mr. Graham's contentions are squarely within the scope of the waiver provision. Mr. Graham's plea agreement contains a provision labeled "Waiver of Appeal and Collateral Attack," wherein he explicitly "waive[d] any right to appeal *or collaterally attack* any matter in connection with [his] prosecution, [his] conviction, or the components of [his] sentence." R. at 126 (emphasis added). The provision goes on to more specifically explain that Mr. Graham "waives any right to challenge a sentence or otherwise attempt to modify or change his sentence *or manner in which it was determined* in any collateral attack, including, but not limited to, a motion brought under [28 U.S.C.] § 2255." *Id.* (emphasis added). Thus, Mr. Graham's ineffective-assistance claim—which is predicated on his contention that the district court erred in computing his applicable sentencing range—is clearly within the scope of the waiver provision. And, significantly, Mr. Graham cannot avail himself of the *Cockerham* exception for ineffective-assistance claims that relate to counsel's representation in negotiating or entering

14

the plea or waiver. *See Cockerham*, 237 F.3d at 1188 ("Because Defendant's § 2255 ineffective assistance claim regarding sentencing for his drug convictions does not relate to the validity of the plea or the waiver, we hold that he has waived the right to bring that challenge so long as he knowingly and voluntarily entered the plea and made the waiver."); *see also United States v. Maxwell*, 256 F. App'x 206, 211 (10th Cir. 2007) ("A defendant who pleads guilty may waive his right to attack his sentence based on ineffective assistance of counsel claims that do not attack the validity of the plea or the plea agreement itself. Because we have affirmed the district court's rejection of Mr. Maxwell's ineffective assistance claims that could vitiate the appeal waiver (i.e., that attack the validity of his plea and the plea agreement), the appeal waiver in the agreement remains effective and should have been enforced as to his ineffective assistance of sentencing claim." (citation omitted)).

Second, Mr. Graham's acceptance of the terms of the waiver provision was both knowing and voluntary. In making this determination, we look to both the "language of the plea agreement," including whether it "states that the defendant entered the agreement knowingly and voluntarily," as well as the "adequa[cy] [of the] Federal Rule of Criminal Procedure 11 colloquy." *Cudjoe*, 634 F.3d at 1166 (quoting *Hahn*, 359 F.3d at 1325). Here, the terms of the waiver provision are abundantly clear—no collateral attack is allowed. The provision also explicitly states that Mr. Graham entered the agreement knowingly and voluntarily. *See* R.

15

at 126 ("Defendant *knowingly and voluntarily* waives any right to appeal or collaterally attack any matter in connection with . . . [his] sentence . . . ."). Furthermore, the prosecutor informed Mr. Graham of the consequences of this waiver provision at his plea hearing, and he specifically acknowledged that he was knowingly and voluntarily waiving his right to collaterally attack his sentence. *Id.* at 95 (quoting from the hearing transcript where defendant indicated that he understood that he was waiving his right to collaterally attack his sentence). Mr. Graham has not presented any argument or evidence suggesting that his waiver was unknowing or involuntary. We therefore agree with the district court's conclusion that his waiver was knowingly and voluntarily made.

Finally, Mr. Graham does not allege—nor can we find—any evidence that enforcement of the waiver provision would result in a miscarriage of justice. A "miscarriage of justice" occurs only where: (1) "the district court relied on an impermissible factor such as race"; (2) "ineffective assistance of counsel in connection with the negotiation of the waiver renders the waiver invalid"; (3) "the sentence exceeds the statutory maximum"; or (4) "the waiver is otherwise unlawful." *Hahn*, 359 F.3d at 1327 (quoting *United States v. Elliot*, 264 F.3d 1171, 1173 (10th Cir. 2001) (internal quotation marks omitted); *see also United States v. Shockey*, 538 F.3d 1355, 1357 (10th Cir. 2008) (noting that this list is exclusive). Mr. Graham "bears the burden [of] demonstrat[ing] that enforcing the waiver would result in a miscarriage of justice"; yet, he fails to suggest how any

16

of the situations enumerated in *Hahn* are present here.  *United States v. Leyva-Matos*, 618 F.3d 1213, 1217 (10th Cir. 2010); *accord United States v. White*, 584 F.3d 935, 948 (10th Cir. 2009).  Consequently, the district court was correct to enforce the waiver provision as to Mr. Graham's claim of ineffective assistance at sentencing.

In sum, Mr. Graham has not "show[n] that the district court's resolution of [his] constitutional claim was either 'debatable or wrong,'" *Taylor*, 454 F.3d at 1078 (quoting *Slack*, 529 U.S. at 484), and we therefore deny him a COA on this claim.

## CONCLUSION

For the foregoing reasons, we **DENY** Mr. Graham's application for a COA and **DISMISS** his appeal.

ENTERED FOR THE COURT

Jerome A. Holmes
Circuit Judge

17